UNITED STATES of America,
Plaintiff,

v.

Jerald Lavelle JOHNSON, Defendant.

No. CR–S–00–394–RLH (PAL).

United States District Court,
D. Nevada.

Jan. 14, 2002.

Kurt Schulke, Criminal Chief Assistant U.S. Attorney, Kimberly M. Frayn, Assistant U.S. Attorney, Las Vegas, NV, for plaintiff.

Peter S. Christiansen, Doris Nehme, Las Vegas, NV, for defendant.

## ORDER

HUNT, District Judge.

Before the Court is Defendant's Motion to Dismiss Indictment (# 75, filed December 21, 2001), seeking dismissal on three grounds, although only two were discussed in the motion. The Government filed its Response (# 77) on January 7, 2002.

Plaintiff seeks dismissal on the grounds that (a) he is being prosecuted vindictively; (b) the Court erred by further explaining the constructive possession; and (c) Mr. Johnson is being tried for the same crime twice.

### BACKGROUND

Defendant Johnson was convicted on December 17, 1998, of Possession of a Controlled Substance with Intent to Sell. He was placed on supervised probation for a term of up to five years, during which he was prohibited from possessing controlled substances or weapons of any kind.

One of the conditions of the probation was submission to a search of his person, residence, vehicle or any property under Defendant's control, at any time deemed necessary by any probation officer.

On July 31, 2000, Probation Officers Leon and Reubart conducted a home visit. When they arrived at the residence in which Defendant had reported he resided, and in which they had conducted previous home visits, the officers found Defendant's vehicle in the driveway, being worked on by another person. That person, upon inquiry, told the officers that the Defendant was in the residence. The garage door was open so the officers proceeded to the door in the garage that led to the residence and knocked several times, without a response. Having been told he was home, they opened the door to summon the Defendant and found him standing behind the door in the dark.

They announced the purpose of their visit and went inside to a bedroom, upon Defendant's representations that the lights did not work in the entry or living room (where there was a TV program playing). Defendant was interviewed in his bedroom, during which he appeared nervous, although the officers were unable to determine why. As the three men returned to the living room area with the officers intending to leave, their interview completed, they saw, from the light from the TV, a firearm on the sofa. Guns were drawn, the Defendant cuffed and given his Miranda Rights. He admitted that he had obtained the gun and that it was loaded when he purchased it. In a subsequent interview at the jail, again after being read his Miranda Rights, he explained how and why he had obtained the semiautomatic handgun, which contained thirty rounds in the magazine.

Based upon the events on the home visit, the officers conducted a search of

Defendant's residence, finding narcotics (rock cocaine) in a man's dress shirt hanging in Defendant's bedroom closet and a scale and grinder with white powder residue, together with twenty-nine grams of rock cocaine and eleven live rounds of ammunition of the same caliber as the handgun. Defendant was taken into custody for violation of his probation (at a subsequent hearing he was found in violation by the State Court).

On November 7, 2000, the Grand Jury returned an Indictment against Defendant, charging him with Felon in Possession of a Firearm in violation of Title 18, U.S.C. § 922(g) and 924(a)(2). On January 30, 2001, the Grand Jury returned a superseding Indictment charging him with the same charge, but citing sections 922(g) and 924(e). On April 17, 2001, the Grand Jury returned a Second Superseding Indictment against the Defendant adding the charges of Possession of a Controlled Substance with Intent to Distribute and Possession of a Firearm in Furtherance of a Drug Trafficking Offense.

On November 26, 2001, trial was had on all three charges. On November 28, 2001, the Jury acquitted Defendant of the narcotics charge contained in Count II and the weapons charge contained in Count III of the Second Superseding Indictment. However, as to Count I, Felon in Possession of a Firearm, the Jury was unable to reach a unanimous verdict and the matter was scheduled to be tried again, as to Count I, on January 28, 2002.

Defendant's statement of facts, in his motion, continues to allege a Miranda violation regarding Defendant's admission of ownership of the gun. That issue was the topic of a suppression hearing held November 29, 2001, prior to trial, which resulted in this Court's ruling that Defendant's Miranda Rights had not been violated. (See Docket # 67.)

## DISCUSSION

### I. DOUBLE JEOPARDY

 At the end of Defendant's statement of facts he lists the grounds for the motion to dismiss. The third ground is that "Mr. Johnson is being tried for the same crime twice." Defendant provides no authority for the proposition that retrial after a jury was unable to reach a unanimous verdict constitutes a constitutional violation against double jeopardy. Neither does he discuss nor even mention the matter further during his LEGAL ARGUMENT. Failure to file points and authorities in support of an issue constitutes consent that a motion be denied as to that issue. See Local Rule LR 7–2(d). Furthermore, there is no merit to Defendant's claim on this ground.

### II. VINDICTIVE PROSECUTION

Defendant urges dismissal based on a claim that the Government has vindictively prosecuted him. He notes two bases from which he urges the Court to draw that conclusion. The first is the fact that the prosecution of the firearm charge was brought in Federal Court where the punishment is greater than in State Court. The second is the fact that the indictment was superseded to add the second and third counts after, Defendant alleges, he refused to negotiate a plea.

### (A) CHOICE OF JURISDICTION

 When there is concurrent jurisdiction of a crime, there is no constitutional right to be charged in the jurisdiction which provides the most lenient sentence upon conviction. "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what

charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

Defendant cites only two cases in support of this proposition, neither of which support his claim. In *United States v. Gilbert,* 266 F.3d 1180 (9th Cir.2001), the Circuit Court held that the Defendant had failed to make the threshold showing that the prosecutor acted vindictively even though Defendant had been successful in legal action against the IRS showing a radical departure from their investigative protocol during their investigation of his case. *Id.* at 1186.

In *United States v. Noushfar,* 78 F.3d 1442 (9th Cir.1996), the Circuit Court held that the money-laundering charges were not vindictively filed even though done to increase the severity of the charges. *Id.* at 1446.

█ Both cases place the burden on a defendant to make an initial showing of vindictiveness. Only when that burden has been met does the obligation fall upon the prosecutor to show a nonvindictive reason for bringing the charges. Here Plaintiff has provided no evidence that the Government acted vindictively in electing to pursue the charges in the Federal Court, where it had every right to do so, rather than in State Court, where the penalties are less severe.

## (B) ADDING CHARGES BY SUPERSEDING INDICTMENT

Here again, Defendant fails to make the initial showing of vindictiveness required by *United States v. Gilbert* and *United States v. Noushfar, supra.* In fact, his claimed basis for vindictiveness is not a claim at all.

█ "The government may, in the course of plea bargaining, offer to reduce charges or threaten reindictment under more serious charges, and it may make good on either promise." *United States v. North,* 746 F.2d 627, 632 (9th Cir.1984), *citing Bordenkircher v. Hayes,* 434 U.S. at 363–65, 98 S.Ct. 663.

█ "Bringing additional charges because a defendant is not willing to plea bargain constitutes permissible prosecutorial discretion." *United States v. Stewart,* 770 F.2d 825, 829 (9th Cir.1985) (*citing Bordenkircher v. Hayes,* 434 U.S. at 364, 98 S.Ct. 663).

█ "During plea negotiations, … prosecutors may threaten additional charges and may carry through on this threat." [*citing North*] This action alone does not violate a defendant's due process rights, nor does it create a presumption of vindictiveness. *United States v. Noushfar,* 78 F.3d at 1446.

█ Defendant provides no evidence, other than the delay of several months in adding the additional charges, even of his claim that the indictment was superseded as punishment for Defendant's refusal to plea to the original charge. However, even if the Court assumes that counsel has the ability to discern the mind and motive of the prosecutor, adding charges because Defendant refused to plea bargain does not constitute vindictive prosecution.

## III. PROPRIETY OF THE COURT'S INSTRUCTION TO THE JURY

█ During deliberations, the jury sent out a note, which was shared with counsel, which read as follows:

We need further definition of No. 16, specifically on what it means to have

physical control of something and to have the power to control something.

Instruction No. 16 read as follows:

The term "possess" means to exercise authority, dominion or control over an object.

A person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it.

After consulting with counsel, the Court determined to make, and did make the following response in writing to the jury:

In response to your question, the words of Instruction # 16, "physical control" and to have "the power to control" take their ordinary meaning and the court may not provide additional definitions or instructions, except, (1) to note that the Instruction uses the word "or" not "and [1]," (2) to caution you to read the instruction carefully, and (3) to refer you to the other instructions you have been given, which bear on your question.

Defendant now claims the Court improperly explained constructive possession to the jury during deliberations. Even a cursory reading of the Court's response reveals that the Court did not explain or even attempt to explain constructive possession. It merely noted that the instruction referred to alternatives and directed the jury to read the instruction carefully and any others which related to their question. The Court did not change or modify Instruction 16. Furthermore, Instruction 16 was agreed to by the Defendant when the Court settled the jury instructions. While Instruction 16 includes constructive possession, the Court's response made no

effort to explain it. It's reference to the words "or" and "and" were prompted by the jury's question which used "and" whereas the Instruction 16 used the word "or."

During his final argument, counsel for Defendant held up a pen and said to the jury words to the effect, "this is what possession is." The Court is not surprised that counsel was not anxious for the jury to realize there were alternative types of possession, actual and constructive. Counsel argued that he had proposed another possession instruction. However, the record is clear that the possession instruction he referred to was the definition of possess for the purposes of finding that Defendant possessed the firearm in furtherance of a drug trafficking crime which Defendant had proposed during the settlement of instructions prior to instructing the jury. It was not the general definition of possession found in Instruction 16.

Despite Defendant's protestations, the Court's action, even if in error, caused no prejudice to the Defendant. He was acquitted of two of the charges and the jury was unable to reach a verdict on the charge still before the Court. The jury's confusion, if anything, worked to his benefit. There is no evidence that the Court's response to the jury question adversely impacted the Defendant in any way. Nor is there evidence that the jury would have found differently had the Court made no response at all.

Any error, or any prejudice, is cured by the mistrial and new trial that is being afforded Defendant.

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that

---

1. A review of the jury's note reveals that it used the word "and" in asking its question.

Defendant's Motion to Dismiss (# 75) is DENIED.